a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **GLENN DAMOND,** Plaintiff | **CIVIL DOCKET NO. 1:23-CV-01811 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **CITY OF ALEXANDRIA ET AL,** Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

REPORT AND RECOMMENDATION

Before the Court is a civil rights Complaint under 42 U.S.C. § 1983 filed by pro se Plaintiff Glenn Damond ("Damond"). Damond is not presently in custody, but was previously. He alleges that Defendants violated federal and state law by failing to provide him adequate medical care while he was incarcerated.

Because Damond does not state a viable constitutional claim, the Complaint should be DENIED and DISMISSED WITH PREJUDICE as to the federal claims, but WITHOUT PREJUDICE as to the state law claims.

I. Background

Damond alleges that he began to suffer mouth pain in September of 2022, which impacted his ability to sleep, brush his teeth, and eat. ECF No. 7 at 6. Damond made verbal complaints to Medical Assistants Jasmine and Carlena, who "misdiagnosed" his condition as a "bad tooth" or abscess. *Id.* at 7. Damond was provided Tylenol and salt to rinse his mouth. *Id.*

1

However, Damond's condition deteriorated over the next several weeks. On October 17, 2022, Damond submitted his first written request for medical care, complaining of mouth pain despite using "pain pills" and "salt water for weeks." ECF No. 1-2 at 3; No. 7 at 7. He indicated that chewing on the left side of his mouth caused pain, and he saw red spots on his gums. Damond also reported difficulty sleeping on his back and neck because his body "gets numb." ECF No. 1-2 at 3.

Damond was promptly examined by Assistant Nurse Lauren in the presence of Head Nurse Felicia. ECF No. 7 at 8. Assistant Nurse Lauren referred him to an outside dentist. *Id.* Damond claims that Nurse Felicia "refused" to provide antibiotics or prescribe a temporary "soft diet," and that both nurses refused to issue pain pills. *Id.* However, Damond also alleges that the nurses are not allowed to prescribe medications or change diets due to an "official policy of Dr. Radar." *Id.* at 9.

Damond alleges that he continued to suffer without a soft food diet and prescription medications. Therefore, he filed a second request for medical care on November 15, 2022, complaining of difficulty eating due to "gum damage," a sore throat, and mouth pain. ECF No. 1-2 at 4.

Damond was examined again by Assistant Nurse Lauren in the presence of Nurse Felicia. ECF No. 7 at 10. Assistant Nurse Lauren assured Damond that he had an upcoming dental appointment, but she was not allowed to provide him the exact date. *Id.* Damond asserts that Nurse Felicia acted with deliberate indifference by refusing to contact the physician, Dr. Radar. *Id.*

2

The following day, Damond submitted a third request for medical care and was examined again by Assistant Nurse Lauren. *Id.* at 11. He claims that he was in tremendous pain. This time, under the instruction of Nurse Felicia, Assistant Nurse Lauren issued several medications, including sinus pills, Tylenol, throat medication, and cough medicine. *Id.* Still, Damond complains that Nurse Felicia should have contacted Dr. Radar to get a soft diet approved as well as pain pills and antibiotics. *Id.*

On November 22, 2022, Damond submitted another medical request. Nurse Felicia instructed Assistant Nurse Lauren to reissue the sinus medicine, cough medicine, Tylenol, ibuprofen, and cough drops. However, Nurse Felicia still "refused" to call Dr. Radar.

Damond alleges that he began to suffer chest pain and an "extreme fear of dying" over the next three days. *Id.* at 13-14. Nurse Carlena was contacted to examine Damond. Nurse Carlena checked Damond's vitals and instructed him to make a follow-up sick call on Monday. *Id.* at 14. That Monday morning, Damond was informed that he was going to a dental clinic. *Id.*

Damond was transported to Tulane Medical Center in Alexandria, Louisiana, where he was examined by Dental Hygienist C. Skinner ("Skinner"). According to the Patient Progress Notes, Skinner conducted a limited oral evaluation, noting "generalized heavy supra and sub gingival calculus." ECF No. 7-1 at 14. Damond claims that Skinner diagnosed him with periodontal disease. Damond complains that despite the purported diagnosis, the RPDC nurses refused to provide him with

3

a soft diet, antibiotics, or pain pills. ECF No. 7 at 16. However, he was provided a medical mouthwash that Skinner prescribed, which he began using twice daily. *Id.* at 18.

Damond was transported back to the dental clinic on December 12, 2022, and received a full mouth debridement. ECF No. 7-1 at 14. The hygienist suggested that Damond return for a comprehensive exam and x-rays when released from custody. *Id.* Skinner gave Damond oral hygiene instructions. *Id.* Damond complains that Skinner should have prescribed "pain pills" and antibiotics. ECF No. 7 at 27.

Damond alleges that, after appealing one of his administrative grievances, the warden agreed that Damond needed additional treatment. ECF No. 7 at 26. He asserts that, at the end of December 2022, the dentist office instructed Nurse Felicia to prescribe antibiotics and pain medication. ECF No. 7 at 27.

Damond also alleges that, around the same time, the warden instructed Officer Benjamin to place him in solitary confinement for no reason. He alleges that the warden and medical staff conspired "to commit the tort of false imprisonment by placing Plaintiff unlawfully in the cell blocks." ECF No. 7 at 29. Damond asserts that he was confined 23 hours daily in a cell for 32 days. *Id.* However, he admits that he requested protective custody, albeit five months prior. *Id.* at 49. Damond further admits that he was informed that he had been placed in the "cell blocks" to ensure that he received his medications and mouth wash, which he claimed he was not receiving in general population. ECF No. 7 at 49-50.

While in solitary confinement, Damond sought and received medical care including pain medication, nausea medication, laxatives, and cold medication. *Id.* at 34-37. He was also examined by Dr. Radar. *Id.*

Damond claims that RPDC has numerous unconstitutional policies including the failure to provide mouthwash or dental floss in the commissary, the inability of the nurses to write prescriptions without the doctor's approval, and the lack of a dentist on location. Damond further claims that in August of 2022, he sent legal mail that was never delivered to the courts. ECF No. 7 at 43. He alleges that he lost his case due to the destruction of his mail. *Id.*

Damond also alleges that he was transferred to the "second bloodiest satellite prison," Catahoula Correctional Center, in retaliation for another inmate asking the nurse for mouthwash. *Id.* at 53-54.

Damond seeks over $10 billion dollars in damages. ECF No. 7 at 97.

II. <u>Law and Analysis</u>

  A. <u>Damond's Complaint is subject to preliminary screening.</u>

Because Damond is proceeding *in forma pauperis*, his Complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2), which provides for sua sponte dismissal of a complaint, or any portion thereof, if a court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

B.   <u>Damond does not allege constitutionally inadequate medical care.</u>

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). A prison official acts with deliberate indifference only if: (1) he knows an inmate faces a substantial risk of serious bodily harm; and (2) he disregards the risk by failing to take reasonable measures to abate it. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.*

Instead, a plaintiff must provide evidence "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quotation marks and citations omitted). The United States Court of Appeals for the Fifth Circuit has defined a "serious medical need [a]s one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12. Overall, "[d]eliberate indifference is an extremely high standard to meet." *Id.* at 346 (quotation marks and citations omitted).

Damond submitted his first written request for medical care on October 17, 2022. ECF No. 1-2 at 3; No. 7 at 7. He was transported to an outside dental clinic one month later. ECF No. 7-1 at 14. In the interim, RPDC responded to each of his

6

requests for medical care, providing pain relievers, sinus pills, throat medication, and cough medicine. ECF No. 7 at 11-12. Damond disagrees with the treatment provided by the nursing staff, Dr. Radar, and the dental hygienist located at the Tulane clinic. But, his disagreement with the extent or course of treatment does not state a viable constitutional claim. *See Gobert*, 463 F.3d at 346; *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (allegation that inmate should have received further treatment does not raise a claim of deliberate indifference). Damond's allegations do not indicate that Defendants refused to treat him, ignored his complaints, or intentionally treated him incorrectly.

Additionally, to state a cause of action under § 1983, a plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Section 1983 does not create supervisory or respondeat superior liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Only the direct acts or omissions of government officials, not the acts of subordinates, give rise to individual liability under § 1983. *Id.* at 742 n. 6 (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)).

Supervisory officials may be held liable only if they: (1) affirmatively participate in acts that cause the constitutional deprivation; or (2) implement unconstitutional policies that causally result in the plaintiff's injury. *Oliver*, 276 F.3d at 742; *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1997). Supervisory

7

liability exists when a supervisor implements a policy so deficient that the policy itself is a repudiation of constitutional rights. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Damond claims that Dr. Radar had a policy that required nurses to receive authorization before prescribing pain pills or changing a diet. ECF No. 7 at 9. Damond identifies no authority indicating that Dr. Radar's policy, if accurate, is unconstitutional. Prison nurses frequently lack the authority "to prescribe drugs or embark on a different course of treatment." *Thayer v. Adams*, 364 F.App'x 883, 891 (5th Cir. 2010) (holding that prison nurses were not deliberately indifferent because they had no authority to prescribe drugs or treatment); *see also Blank v. Bell,* 634 F. App'x 445, 449 (5th Cir. 2016) (nurse did not have authority to prescribe narcotics or medications); *Brown v. Wichita Cnty.*, 7:05-CV-0108, 2008 WL 958210, at *4 (N.D. Tex. 2008) (standing orders only allowed nurses to give medications for basic symptoms such as nausea, sore throat, pain). Nurse Felicia and Assistant Nurse Lauren were clearly authorized to administer sinus medicine, cough medicine, Tylenol, ibuprofen, cough drops, nausea medication, and laxatives, as Damond alleges. Additionally, Damond's first written medical request indicates that he had received "pain pills" and "salt water" rinses for weeks prior. ECF No. 1-2 at 3. Damond was clearly provided medical treatment before and after his written requests.

Damond also complains of a prison policy excluding mouthwash and dental floss from items available in the commissary. To succeed on a deprivation-of-

8

hygiene claim, a plaintiff must show an "extreme deprivation" of sanitation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). When toothbrushes and toothpaste are available, the lack of mouthwash and dental floss is not an extreme deprivation. *See Reed v. Dallas Cnty. Sheriff's Dep't*, 3:03-CV-2166-R, 2004 WL 2187104, at *5 (N.D. Tex. 2004), *report and recommendation adopted*, 2004 WL 2495085 (N.D. Tex. 2004) (when adequate alternate hygiene products are available, there is no constitutional deprivation).

### C. Damond fails to state a viable claim regarding the conditions of his confinement.

Damond claims that he was placed in segregation without due process of law. The Due Process Clause does not protect every change in the conditions of confinement having an adverse impact on the prisoner. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995). Placement in segregated confinement does not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest claim. *Id.* at 485–86; *see also Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). The loss of prison privileges "are in fact merely changes in the conditions of his confinement and do not implicate due process concerns." *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

Moreover, "a prison inmate does not have a protectable liberty or property interest in his custodial classification." *Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (citing *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). Classification is an administrative function, and prison officials can change

an inmate's classification for almost any reason or no reason at all. *See id.*; *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n. 4 (5th Cir. 1993); *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989).

Additionally, broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

Therefore, Damond does not state a viable due process claim.

D. <u>Damond fails to state a viable claim for retaliation.</u>

Damond alleges that he was placed in segregation in retaliation for exercising his "legal right" to file "legal documents against the administration." ECF No. 7 at 42. He also claims that he was transferred in retaliation for another inmate asking the nurse for mouthwash. *Id.* at 53-54.

To state a § 1983 claim for retaliation, a prisoner must allege: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *See Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must also allege more than

his personal belief that he is the victim of retaliation. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Jones*, 188 F.3d at 325 (citations omitted). Additionally, a plaintiff must allege specific facts, not conclusory allegations. *See Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

Damond claims that Defendants "lied" to him by telling him his transfer to the cell blocks was to ensure he received his medication after he complained that he was not receiving it in general population. ECF No. 7 at 49-50. He claims that the real reason for his transfer to segregation was because of his complaints about his medical care. Damond's claim that his move was retaliatory is conclusory.

Likewise, Damond's claim that he was transferred to Catahoula Correctional Center in retaliation for another inmate requesting mouthwash is conclusory. Conclusory allegations and unwarranted deductions of fact are not admitted as true. *See Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

Damond also asserts that Defendants destroyed his written appeal of the dismissal of a $500 million dollar lawsuit in the Middle District of Louisiana because his appeal was never received by that court or the Fifth Circuit. ECF No. 7 at 46-48. The lawsuit alleged the deprivation of medical care at the East Baton Rouge Parish Prison. It was dismissed on August 10, 2022, before he began to request medical care or file grievances related to his medical treatment. *See*

11

*Damond v. City of Baton Rouge, et al.*, 3:20-CV-839, ECF No. 124.  Therefore, Damond cannot establish causation.

      E.    <u>The state law claims should be dismissed.</u>

Finally, Damond seeks to invoke the supplemental jurisdiction of this Court over his state law claims.  However, because the undersigned recommends dismissal of Damond's federal claims, supplemental jurisdiction should be declined. *See* 28 U.S.C. § 1367.

### III. <u>Conclusion</u>

Because Damond fails to state a viable constitutional claim, IT IS RECOMMENDED that his § 1983 Complaint be DENIED and DISMISSED under § 1915(e), WITH PREJDUDICE to the federal claims and WITHOUT PREJUDICE to the state claims.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, June 25, 2024.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE